UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-13229-RWZ

RAHMA FREEMAN OSGOOD

v.

TOWN OF SALISBURY, DANIEL B. MCNEIL,
and MICHAEL TULLERCASH

MEMORANDUM OF DECISION

May 22, 2015

ZOBEL, D.J.

Plaintiff, Rahma Freeman Osgood ("Osgood"), complains of the conduct of defendants Daniel B. McNeil and Michael Tullercash (the "individual defendants") in responding to a domestic dispute with plaintiff's then-boyfriend. The First Amended Complaint[1] (Docket # 21, Exhibit 1) asserts claims against the individual defendants for false arrest in violation of her Fourth Amendment rights pursuant to 42 U.S.C. § 1983 (Count 6-7), and for the torts of false arrest and intentional infliction of emotional distress (Count 2-5). She also sues the Town of Salisbury ("the Town"), alleging claims for vicarious negligence, based on the actions of McNeil and Tullercash during and after plaintiff's arrest (Count 1), and direct claims of negligence for an alleged failure to

---

[1] Plaintiff's motion to amend the complaint (Docket # 21) is ALLOWED.

train and supervise McNeil and Tullercash (Count 1) and for the hiring, retention and promotion of McNeil, who was Acting Sergeant for the Salisbury Police Department at the time of plaintiff's arrest (Count 8). All defendants have moved for summary judgment (Docket ## 26 and 29).

## I. Facts

In deciding those motions, I take, as true, all facts supported by the record and not disputed, and draw all inferences in the nonmoving party's favor.

On the night of February 6, 2012, some time around 3:00 a.m., Salisbury Police Sergeant Daniel McNeil ("McNeil") and Salisbury Police Officer Michael Tullercash ("Tullercash") responded, separately, to a report of a domestic disturbance at the home of Rahma Freeman Osgood ("Osgood"), the plaintiff in this matter. First Amended Complaint (hereinafter "Complaint"), ¶ 6; Arrest Report of Rahma Freeman, Docket # 28, Exhibit B. When McNeil arrived, Osgood's boyfriend, Luis Anaya ("Anaya"), was outside the home talking on his phone. He told McNeil that Osgood "had cut him all up" with a knife. Complaint, ¶ 6; Deposition of McNeil, Docket # 28, Exhibit C, p. 19-20. At the time, Anaya's face was bloodied and scratched, and he showed the police officers a welt on his foot he claimed was caused by the plaintiff stomping on it with her heel. Deposition Testimony of Rahma Freeman Osgood, Docket # 31, at 11:4-12.

McNeil then entered the house and spoke with Osgood. Osgood denied causing injury to Anaya and told McNeil that Anaya had cut and assaulted her. Complaint, ¶ 6. Osgood further informed McNeil that there were surveillance cameras inside the home. Id., ¶ 7. McNeil placed Osgood under arrest for domestic assault and battery and

assault and battery with a dangerous weapon. Complaint, ¶¶ 7-8. When he saw Osgood being arrested, Anaya became agitated and began screaming that he had lied and that he had cut himself. Complaint ¶ 7.

Plaintiff was released from detention after eight days when her mother brought the surveillance videos from the apartment to the police station. They revealed Anaya had perpetrated the attack on plaintiff, not the reverse. Complaint ¶ 9. The surveillance footage was not viewable the night of the incident. <u>Deposition Testimony of Kendra Pike-Osgood</u>, Docket # 28, Exhibit 7, p. 15-16. Anaya was subsequently charged and served jail time. Complaint ¶ 10.

## II. Standard of Review

Summary judgment is appropriate when the moving party shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering whether or not a genuine issue of material fact exists, the court "must view the evidence in the light most favorable to the opposing party." <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1866 (2014). The nonmovant, however, "must point to competent evidence and specific facts to stave off summary judgment." <u>Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London</u>, 637 F.3d 53, 56 (1st Cir. 2011); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

"[I]t is pointless to submit ... [a] probable cause question[ ] to the jury at all unless the facts are disputed." <u>Acosta v. Ames Dep't Stores, Inc.</u>, 386 F.3d 5, 8 (1st Cir. 2004). "When the relevant facts leading to the officer's involvement are established, probable cause is a 'mixed question of law and fact' suitable for

3

determination by the court." Id. at 8-9 (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)). "In the case at hand, the material facts—what the police knew at the moment of the arrest, the source of their knowledge, and the leads that they pursued or eschewed—are not in dispute. When that is so, the existence *vel non* of probable cause ordinarily is amenable to summary judgment." Id. at 9 (citing Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 254-56 (1st Cir. 1996)).

### III. Discussion

#### A. Motion to Strike

I start with defendants' motion to strike an affidavit of a putative expert (Docket ## 41 and 48).

Federal Rule of Civil Procedure 26(a)(2)(D) requires that a party disclose the experts that they intend to call at trial "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "If a party fails to provide information or identify a witness as required by Rule 26(a)..., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c).

In the parties' joint statement for scheduling, which I adopted as the scheduling order, see Docket ## 13, 16, there was a final deadline for fact discovery, other than expert discovery, of December 11, 2014. "All trial experts by all parties [were to] be designated, and the information contemplated by Fed.R.Civ.P. 26(a)(2) [was to] be disclosed, by February 2, 2015." See Docket # 13. On January 30, 2015, the deadline set for dispositive motions, see Docket # 24, and two days before the expert disclosure

4

deadline, the Town and the Individual defendants each moved for summary judgment. See Docket ## 26, 29.

Plaintiff proffers affidavits by a former police officer with no affiliation to the case, David J. Putnam ("Putnam"), in opposition to each defendant's motion for summary judgment. See Docket ## 40, 46. The Town moved to strike the affidavit in opposition to its motion under Fed.R.Civ.P. 37(c)(1) because the report and the designation of Putnam as an expert were untimely under this court's scheduling order and Federal Rules of Civil Procedure 26(a)(2)(A) and (D). See Docket # 41. The individual defendants moved to strike the affidavit in opposition to their own motion on Daubert grounds, arguing Putnam is incompetent to testify as an expert on the proffered topics. See Docket # 48; Daubert v. Merrell Dow Pharmaceuticals, 505 U.S. 579 (1993).

Plaintiff cannot contest that the disclosure of Putnam was untimely, and indeed does not appear to argue that her failure was "substantially justified" or "harmless." Her only justification, other than her claimed need of the testimony, is that "[h]is testimony responds directly to the factual arguments set forth in the Defendant's Motion for Summary Judgment." See Opposition to Motion to Strike, Docket # 42, ¶ 8. This argument is unavailing given that Putnam's proffered testimony is explicitly and entirely based on the discovery record already available to plaintiff well before the filing of dispositive motions in this case. Moreover, plaintiff had two days after the filing of dispositive motions and before the disclosure deadline in which to designate an expert witness or request an extension of time for such designation. Instead, plaintiff moved on February 20, the opposition deadline, for an extension of time to file her opposition

to March 31.  See Docket # 34.  She made no mention in that request of the need for expert discovery.  Id.

Further, I do not accept plaintiff's contention that the defendants would suffer no prejudice from this late disclosure, because Putnam's report was, by plaintiff's own admission, calculated in its entirety to respond directly to the defendants' motions for summary judgment.

The Town's motion to strike (Docket # 41) is ALLOWED.  See Fed.R.Civ.P. 37; Samaan v. St. Joseph Hosp., 670 F.3d 21, 37 (1st Cir. 2012) (no error in excluding late expert testimony when the "plaintiff offered absolutely no justification for the late designation."); Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 20 (1st Cir. 2001) (Rule 37(c) "requires the near automatic exclusion of Rule 26 information that is not timely disclosed").  Given the above reasoning, the individual defendants' motion to strike (Docket # 48), is ALLOWED, as Putnam was designated late and is barred from testifying *in toto*.[2]

### B. Summary Judgment

The absence of probable cause for plaintiff's arrest is the keystone of her complaint, without which all her legal theories collapse.  The absence of probable cause is an element of false arrest, in both its common and constitutional forms.  See Mitchell v. City of Boston, 130 F. Supp. 2d 201, 214 (D. Mass. 2001) (listing elements

---

[2] Though I need not reach the Daubert issue, it appears likely the report is inadmissible in any event.  See Cruz v. Kagan, No. 09-CV-11793-RGS, 2011 WL 2516711, at *2 (D. Mass. June 22, 2011) ("[Retired police officer's] proffered expert testimony (perhaps better characterized as expert argument) encroaches unacceptably on the functions of the court as the arbiter of law and the jury as the arbiter of fact.").

of false arrest, including lack of privilege); Roche, 81 F.3d at 254 ("[I]f probable cause to arrest and prosecute the appellant existed, no unconstitutional deprivation occurred."). Negligence in arrest fails if the officers acted reasonably, which they did of necessity if they acted on probable cause. Acosta, 386 F.3d at 12. And a police officer's lawful arrest of a suspect cannot on its own be deemed "extreme and outrageous," as necessary to sustain a claim for intentional infliction of emotional distress. See Kennedy v. Town of Billerica, 617 F.3d 520, 530 (1st Cir. 2010). Likewise, if the arrest was supported by probable cause, the claims against the Town for its alleged negligence in hiring, promotion, retention, training, *etc.* of the individual defendants must fail because there would be no cognizable injury arising from any alleged negligence by the Town. Id. at 12 ("In this case, the existence of probable cause rendered the arrest legal. By like token, in the absence of a false or unconstitutional arrest, the two other section 1983 counts—both of which are failure-to-train counts ... —necessarily founder.").

"Probable cause to arrest exists if, at the moment of the arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense." Roche, 81 F.3d 249, 254 (1st Cir. 1996). "[I]nformation furnished by a victim is generally considered sufficiently reliable to support a finding of probable cause." Holder v. Town Of Sandown, 585 F.3d 500, 505 (1st Cir. 2009). "In the absence of circumstances that would raise a reasonably prudent officer's antennae, there is no

7

requirement that the officer corroborate every aspect of every complaint with extrinsic information. The uncorroborated testimony of a victim ..., standing alone, ordinarily can support a finding of probable cause." Id. Indeed, the "test for probable cause does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable." Acosta, 386 F.3d at 11. There is no general duty for police officers to fully investigate before making a probable cause determination; an officer may terminate his investigation when he accumulates facts that demonstrate probable cause. Id.

Here, someone called the police from Anaya's phone late at night. When the police arrived, Anaya was still outside talking on the phone and alleged he was the victim of a domestic battery. At that time, his face was visibly scratched and injured, and he alleged he had been attacked by the plaintiff, his girlfriend, with a knife. He further showed them an injury on his foot he alleged was caused by the plaintiff. When the police officers entered the premises and questioned the plaintiff, she was uncooperative and had a slash wound on her hand. These facts were sufficient to lead a reasonable officer to conclude that she had, in fact, assaulted Anaya. The fact that Anaya was drunk would serve to undermine his credibility, but the corroborating facts of his visible injuries and the plaintiff's own knife wound neutralized that difficulty. Nor did his later recantation shift the balance of evidence against the reasonableness of plaintiff's arrest.

## IV. Conclusion

Plaintiff's motion to amend the complaint (Docket # 21) is ALLOWED.

The Town's motion to strike (Docket # 41) is ALLOWED.

The individual defendants' motion to strike (Docket # 48) is ALLOWED.

The Town's motion for summary judgment (Docket # 29) is ALLOWED.

The individual defendants' motion for summary judgment (Docket # 26) is ALLOWED.

Judgment may be entered for the defendants.

|  |  |
|---|---|
| May 22, 2015 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |